IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Wilson and Atlantic Bullion & Coin, Inc., | ) ) ) ) | Civil Action No.: 8:15-cv-04116-JMC |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| Jennifer and Shawn Pressley, and Southern First Bank, | ) ) ) ) | |
| Defendants. | ) ) | |
| Southern First Bank, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| Cassie Wilson f/k/a Cassie Kendall, | ) ) | |
| Third-Party Defendant. | ) ) | |

Plaintiff Beattie B. Ashmore ("Plaintiff"), in his capacity as court-appointed Receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed this action against Defendants Jennifer and Shawn Pressley ("Defendants") to recover real property and money that flowed from the Wilson-AB&C Ponzi scheme.[1]

---

[1] "A Ponzi scheme is a fraudulent investment program in which funds are paid in by investors and later investors['] funds are used to pay out nonexistent phantom profits to the original investors, thus creating the illusion that the fraudulent investment program is a successful, profit generating enterprise which, in turn attracts new investment funds that are used to sustain the fraudulent program." *United States v. Wilson*, Cr. No. 8:12-cr-00320-JMC, ECF No. 1-1 at 2 ¶ 6 (D.S.C. Apr. 4, 2012). In *Wilson*, the United States alleged that Wilson, through AB&C, "orchestrated a Ponzi scheme whereby he led investors to believe that he was investing their money in silver, when in fact, Wilson was not buying silver but using the money for his personal gain. . . [and] [t]o keep the Ponzi scheme going, Wilson also made payments to earlier investors to whom Wilson made

1

This matter is before the court pursuant to Plaintiff's Motion for Summary Judgment. (ECF No. 53.) Specifically, Plaintiff requests that the court grant summary judgment with regard to the unjust enrichment claim against Defendants and to transfer to Plaintiff a strip of land (hereinafter "Flag Pole Acres") currently held by Defendants. (*Id*. at 1.) Defendants oppose Plaintiff's Motion, asserting that it should be denied. For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment (ECF No. 53).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 2, 1999, Cassie Wilson, wife of Ronnie Wilson, purchased 59.74 acres of land and placed the property in her name. (ECF No. 1 at 3.) On October 1, 2005, Cassie Wilson purchased an additional 22.27 acres of land, totaling to 82.01 acres (hereinafter "the Wilson Farm"). (*Id*. at 4.) Plaintiff alleges that the source of the money for the purchase of the 82.01 acres came from the Ponzi scheme. (ECF No. 53 at 3.)

On February 26, 2008, Cassie Wilson deeded over to her and Ronnie Wilson's daughter, Jennifer Pressley, and her spouse, Shawn Pressley, 6.58 acres of the land carved out of the Wilson Farm (hereinafter "the Pressley Parcel"). (*Id*.) Plaintiff, as court-appointed Receiver in the related matter, *In Re: Receiver for Ronne Gene Wilson and Atl. Bullion & Coin, Inc.*, C/A No.: 8:12-cv-02078-JMC, ECF No.1 (D.S.C. July 25, 2012), alleges that Defendants "received from the AB&C Ponzi scheme a two acre tract of land (hereinafter "Home Acres") and approximately $135,000.00, the majority of which was used to build a home (hereinafter "the Pressley Home") on that land, as well as an additional strip of land of approximately five acres (Flag Pole Acres) in order to give

---

representations that their investments were earning high rates of return –sometimes in excess of 200 percent." (*Id*. at ECF No. 17 at 1.) On July 30, 2012, Wilson and AB&C pled guilty to two counts of mail fraud stemming from their involvement in the criminal Ponzi scheme. (ECF No. 1 at 3.)

access to the two acres of real property upon which their primary residence is located." (ECF No. 53 at 3.) The money was mostly paid to a contractor named Robbie Whitfield ("Whitfield"). (*Id*. at 4.) To accomplish the completion of the construction, Defendants obtained a loan from Greenville First Bank n/k/a Southern First Bank ("the Bank") in the amount of $120,000.00. (*Id*. at 5.) In exchange, the Bank was given a mortgage on Defendants' home built on Home Acres. (*Id*.) At the time of the mortgage, Defendants and the Bank believed the home and corresponding recorded mortgage were on the Pressley Parcel. (ECF No. 1 at 5.) On August 29, 2013, Plaintiff commissioned a full survey of the Wilson Farm and discovered that the Pressley Home was not built on the Pressley Parcel, but rather on the Wilson Farm, which is real property currently held by Plaintiff. (*Id*.)

Based on his appointment as Receiver tasked with "locating, managing, recouping, and distributing the assets of the Wilson-AB&C investment scheme," Plaintiff commenced this action against Defendants on October 6, 2015, asserting claims for declaratory judgment regarding the legal ownership of the real property upon which Defendants' home was built and unjust enrichment in the amount of $135,000.00. (*Id*.)

On February 15, 2017, Plaintiff filed a Motion for Summary Judgment, asserting that there are no genuine disputes of material fact as to Plaintiff's request for a declaratory judgment, or claim for unjust enrichment and resulting damages of $135,000.00. (ECF No. 53 at 6.) As of the filing of the Summary Judgment Motion, Plaintiff and the Bank agreed to a reformation of the deed to reflect that the Pressley Home was built on the Pressley Parcel, now subject to the Bank's mortgage.[2] (*Id*. at 5.) Plaintiff asserted that the agreement to reform the deed involved only Home

---

[2] *See Southern First v. Pressley*, 2016-CP-42-3079. Defendants are in default in the state court action.

Acres where the Pressley Home was built and the mortgage was placed. Thus, Plaintiff contended that this left Flag Pole Acres, owned by Defendants, subject to Plaintiff's declaratory judgment action. (*Id.*)

On March 1, 2017, Defendants filed a response in opposition to Plaintiff's Motion, asserting there is a genuine dispute about the material facts because the amount of damages has not been proven and thus, Plaintiff is not entitled to judgment as a matter of law. Further, Defendants asserted that Flag Pole Acres is required by law to be attached to Home Acres[3] and because the Pressley Home is in foreclosure, Plaintiff should seek damages from the Bank. (ECF No. 56 at 2.)

On March 8, 2017, Plaintiff filed a Reply to Defendants' response, asserting that based on undisputed facts contained in the depositions of Shawn Pressley and Whitfield, Plaintiff lowered the damages amount he was seeking from $135,000.00 to $73,705.00. (ECF No. 57 at 2.) Shawn Pressley admitted that a portion of the initial costs for the construction of the home came from Wilson through work performed by Whitfield and paid for by Wilson. (ECF No. 57-1 at 5-6.) Whitfield stated that he was hired by Wilson to perform work on Defendants' home. (ECF No. 57-2 at 2 ¶ 2.) He further stated, "I was responsible for contracting out the clearing and grading of the lot, digging and pouring the basement, footings, foundation walls, framing, subfloors, roof framing, roof sheathing and felting." (*Id.* at ¶ 3.) In his affidavit, Whitfield stated that he had receipts illustrating $4,300.00 he paid in checks, that he paid the concrete finisher $39,205.00 to complete the basement slab and walls, and he had lumber and materials from Dixie lumber totaling

---

[3] Because the County of Spartanburg requires that all homes, such as the Pressley Home, have legal access to the main county roads, Flag Pole Acres became an essential addition to the 2 acres deeded to Defendants for the Pressley Home, all of which is now subject to foreclosure proceedings in that county. However, Plaintiff contends that Flag Pole Acres are "critical to the Wilson Farm," subject to Plaintiff's claim. (ECF No. 53 at 8 n.4.)

$13,200.00. (*Id*. at ¶ 4-5, *id*. at 3 ¶ 7.) Further, Whitfield asserted that he paid a framer five dollars a square foot to frame the home and three dollars a square foot to frame the basement, resulting in approximately $17,000.00 of costs. (ECF No. 57-2 at 3 ¶ 6.) Shawn Pressley specifically testified that Whitfield "paid for the materials and the pouring of the basement" and "paid for the framers to do the labor."[4] (ECF No. 57-1 at 5.) Plaintiff, however, still sought control of Flag Pole Acres, asserting it was not subject to the Bank's foreclosure action, and contended that Defendants' argument that Plaintiff should seek damages from the Bank was "wholly without merit." (ECF No. 57 at 3.)

On March 10, 2017, Defendants filed a Sur-Reply to Plaintiff's Reply, asserting that the documents Plaintiff relied on to lower the damages amount were questionable. (ECF No. 60 at 1.) Further, Defendants re-asserted that because the Bank is selling their home, Plaintiff needed to seek damages from the Bank, not them. (*Id*. at 2.) Lastly, Defendants asserted that Plaintiff's allegations that Flag Pole Acres was partially acquired and partially improved with monies arising from the Ponzi scheme were not supported by sufficient evidence. (*Id*. at 3.)

## II. JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Plaintiff's allegation that the Complaint "is so related to the *In Re Receiver*, 8:12-cv-2078-JMC case and the underlying criminal case, *United States v Wilson, et al*, 8:12-cr-00320[,]" cases in which the court has jurisdiction, "that it forms part of the underlying case or controversy." (ECF No. 1 at 1 ¶ 3.) The court may properly hear Plaintiff's state law claims for fraudulent transfer and unjust

---

[4] Whitfield states in his affidavit that the home was 2,365 square feet and the basement was 2,050 square feet. (ECF No. 57-2 at 3 ¶ 6.) These numbers were used to calculate the cost of framing. (*Id*.) In his deposition, Shawn Pressley described the home as 2,500 square feet plus an additional 2,000 square feet in the basement. (ECF 57-1 at 6.) As such, there is no dispute of fact as to the size of the home.

5

enrichment based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ." 28 U.S.C. § 1367(a).

### III.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[I]n ruling on a motion for summary judgment, 'the evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor.'" *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1863 (2014) (per curiam) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248.

The movant bears the initial burden of demonstrating to the court that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this threshold showing has been made, the non-moving party cannot survive summary judgment by resting on the allegations in the pleadings. Rather, the non-moving party must provide specific, material facts giving rise to a genuine issue. *See id*. at 324. Under this standard, the mere scintilla of evidence is insufficient to withstand the summary judgment motion. *See Anderson*, 477 U.S. at 255 (1986).

### IV.     ANALYSIS

The first dispute in this matter is whether there is no genuine issue of material fact as to Plaintiff's unjust enrichment claim in the amount of $73,705.00, stemming from Wilson/AB&C's direct payments for the construction of Defendants' home. To prevail under a theory of unjust enrichment, a plaintiff must demonstrate the following elements: "(1) [a] benefit conferred by [the]

plaintiff upon the defendant, (2) realization of that benefit by the defendant, and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Gignilliat v. Gignilliant, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 467 (2009) (internal quotation omitted). "A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another." *Inglese v. Beal*, 403 S.C. 290, 297 (Ct. App. 2013) (quoting *Dema v. Tenet Physician Servs. –Hilton Head, Inc.*, 383 S.C. 115, 123 (2009).

First, Defendants unquestionably conferred a benefit by Plaintiff because Defendants received money directly for use in building their home. Second, Defendants realized the benefit because they lived in the home. Third, it is inequitable for Defendants to retain the profit as the monies were obtained by fraud and injured both the receivership entities and investors who lost money as a result of the fraud. *See Ashmore v. Cook*, No. 3:13-1449-MBS, 2013 WL 6283508, at *4 (D.S.C. Dec. 4, 2013) ("[I]t would be inequitable for Defendant to enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky." (internal quotations omitted)).

As for the damages amount pertaining to the unjust enrichment claim, the court finds there is no dispute as to the $73,705.00 figure suggested by Plaintiff. As discussed in the Factual and Procedural Background section, both Shawn Pressley and Whitfield admitted under sworn testimony that the amounts which added up to the figure were accurate. If Plaintiff is willing to accept a lower amount for damages than originally requested in the Complaint and his initial Summary Judgment Motion ($135,000.00), the court will not stand in the way.

The second dispute in this matter is whether there is no genuine issue of material fact as to Plaintiff's request to transfer Flag Pole Acres from Defendants to Plaintiff. Pursuant to paragraph

1 of the Receivership Order, entered most recently on October 29, 2015, Plaintiff has the right to take control of real property in the possession of Wilson family members that was acquired with AB&C funds. (ECF No. 53 at 8.) Plaintiff asserts that the 5.82 Flag Pole Acres were partially acquired with funds from Henry & Crowder Family Limited Partnership. (*Id*.) Although Exhibit D contains a check for $90,440.15, it is not clear to the court that this check was used to acquire Flag Pole Acres. (ECF No. 53-4.)

Plaintiff also asserts that the remaining portion of Flag Pole Acres, if not purchased with AB&C funds, was improved with funds that flowed from the AB&C Ponzi scheme. (ECF No. 53 at 8.) Although Plaintiff points to Exhibit E to show "invoices and checks to Whitfield Enterprises, LLC for construction of the farm," it does not make clear to the court what, if any, construction was for Flag Pole Acres. (ECF No. 53-5.) Furthermore, there is a genuine material dispute as to whether Flag Pole Acres is under control of the foreclosure action filed by the Bank, as it became an essential addition to the two acres deeded to Defendants for their home (*see* n.3), or whether it should be considered part of the Wilson Farm that is under control of Plaintiff. Defendants assert that Flag Pole Acres was "included in all paperwork with the Bank" (ECF No. 56 at 4), while Plaintiff asserts Flag Pole Acres is "not subject to the foreclosure action filed by the Bank" (ECF No. 57 at 3). The court is unclear how the reformation of the deed between Plaintiff and the Bank left Flag Pole Acres to be owned by Defendants and subject to Plaintiff's claim.

Lastly, Defendants assert that because their home is in foreclosure, Plaintiff should seek damages from the Bank, instead of them. Defendants' logic is that "the money paid to Whitfield for work performed on Defendants' home flowed directly from Wilson to Whitfield, and is contained in the wood, nails, and construction material in the part of the home worked upon by Whitfield." (ECF No. 60 at 2.) Defendants contend that "the only way to separate the parts of the

house paid for by Wilson and those paid for by the loan from the Bank is through sale of the house. Since the home is currently undergoing foreclosure and will be sold by the Bank, Plaintiff should seek from the Bank, the mortgage holder, the actual damages arising from the part of construction completed by Whitfield." *Id*. If not, Defendants believe Plaintiff will have allowed the Bank to receive "an unjust enrichment in that they profited from work paid for by Ponzi money." *Id*. The court finds that there is a dispute as to whether the $73,705.00 damages amount should come from Defendants or the Bank since it is foreclosing on Defendants' home.

Therefore, the court concludes that Defendants were unjustly enriched and the damages amount is $73,705.00. However, there still remain genuine disputes of material fact as to (1) whether Flag Pole Acres should be under control of the Bank's foreclosure action or part of the Wilson Farm that is under Plaintiff's control, and (2) whether the $73,705.00 damages amount should come from Defendants or the Bank after it forecloses on Defendants' home.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 53) is **GRANTED IN PART** as to the unjust enrichment claim and **DENIED IN PART** as to the declaratory judgment action, and as to the person or entity responsible for payment of damages for the unjust enrichment claim.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 18, 2017
Columbia, South Carolina