IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Wilson and Atlantic Bullion & Coin, Inc., | ) ) ) ) | Civil Action No.: 8:15-cv-04116-JMC |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| Jennifer and Shawn Pressley, and Southern First Bank, | ) ) ) | |
| Defendants. | ) ) ) | |
| Southern First Bank, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) ) | |
| Cassie Wilson f/k/a Cassie Kendall, | ) ) | |
| Third-Party Defendant. | ) ) ) | |

Plaintiff Beattie B. Ashmore ("Plaintiff"), in his capacity as court-appointed Receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed this action against Defendants Jennifer and Shawn Pressley ("Defendants") to recover real property and money that flowed from the Wilson-AB&C Ponzi scheme.[1]

---

[1] "A Ponzi scheme is a fraudulent investment program in which funds are paid in by investors and later investors['] funds are used to pay out nonexistent phantom profits to the original investors, thus creating the illusion that the fraudulent investment program is a successful, profit generating enterprise which, in turn attracts new investment funds that are used to sustain the fraudulent program." *United States v. Wilson*, Cr. No. 8:12-cr-00320-JMC, ECF No. 1-1 at 2 ¶ 6 (D.S.C. Apr. 4, 2012). In *Wilson*, the United States alleged that Wilson, through AB&C, "orchestrated a Ponzi scheme whereby he led investors to believe that he was investing their money in silver, when in fact, Wilson was not buying silver but using the money for his personal gain. . . [and] [t]o keep the Ponzi scheme going, Wilson also made payments to earlier investors to whom Wilson made

On February 15, 2017, Plaintiff filed a Motion for Summary Judgment. (ECF No. 53.) Specifically, Plaintiff requested that the court grant summary judgment with regard to an unjust enrichment claim against Defendants and to transfer to Plaintiff a strip of land (hereinafter "Flag Pole Acres") currently held by Defendants. (*Id*. at 1.) Defendants opposed Plaintiff's Motion. (ECF No. 56.) On September 19, 2017, the court granted in part Plaintiff's Motion for Summary Judgment as to the unjust enrichment claim, and denied in part Plaintiff's Motion as to the declaratory judgment action, and as to the person or entity responsible for payment of damages for the unjust enrichment claim. (ECF No. 75.) The court held a bench trial on the disputed issues on October 2, 2017.[2] After carefully considering all the evidence, the court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 2, 1999, Cassie Wilson, wife of Ronnie Wilson, purchased 59.74 acres of land and placed the property in her name. (ECF No. 1 at 3.) On October 1, 2005, Cassie Wilson purchased an additional 22.27 acres of land, totaling to 82.01 acres (hereinafter "the Wilson Farm"). (*Id*. at 4.) Plaintiff alleges that the source of the money for the purchase of the 82.01 acres came from the Ponzi scheme. (ECF No. 53 at 3.)

---

representations that their investments were earning high rates of return –sometimes in excess of 200 percent." (*Id*. at ECF No. 17 at 1.) On July 30, 2012, Wilson and AB&C pled guilty to two counts of mail fraud stemming from their involvement in the criminal Ponzi scheme. (ECF No. 1 at 3.)

[2] Plaintiff's counsel was present at the bench trial. (Draft Tr. at 2.) Defendants were duly and properly noticed of the bench trial, but did not appear. (*Id*.) When the notice was mailed to Defendants, there was no information on record that Defendants' address had changed. (*Id*.) Notices prior to the bench trial were mailed to Defendants' address on file and nothing was returned as undeliverable. (*Id*. at 3.) Further, the address where the court has sent material to Defendants has elicited a response from them previously, as shown by the filing of Defendant's Response to Plaintiff's Motion for Summary Judgment. (*Id*. at 5.)

2

On February 26, 2008, Cassie Wilson deeded over to her and Ronnie Wilson's daughter, Jennifer Pressley, and her spouse, Shawn Pressley, 6.58 acres of the land carved out of the Wilson Farm (hereinafter "the Pressley Parcel"). (*Id*.) Plaintiff, as court-appointed Receiver in the related matter, *In Re: Receiver for Ronne Gene Wilson and Atl. Bullion & Coin, Inc.*, C/A No.: 8:12-cv-02078-JMC, ECF No.1 (D.S.C. July 25, 2012), alleges that Defendants "received from the AB&C Ponzi scheme a two acre tract of land (hereinafter "Home Acres") and approximately $135,000.00, the majority of which was used to build a home (hereinafter "the Pressley Home") on that land, as well as an additional strip of land of approximately five acres (Flag Pole Acres) in order to give access to the two acres of real property upon which their primary residence is located." (ECF No. 53 at 3.) The money was mostly paid to a contractor named Robbie Whitfield ("Whitfield"). (*Id.* at 4.) To accomplish the completion of the construction, Defendants obtained a loan from Greenville First Bank n/k/a Southern First Bank ("the Bank") in the amount of $120,000.00. (*Id.* at 5.) In exchange, the Bank was given a mortgage on Defendants' home built on Home Acres. (*Id.*) At the time of the mortgage, Defendants and the Bank believed the home and corresponding recorded mortgage were on the Pressley Parcel. (ECF No. 1 at 5.) On August 29, 2013, Plaintiff commissioned a full survey of the Wilson Farm and discovered that the Pressley Home was not built on the Pressley Parcel, but rather on the Wilson Farm, which is real property currently held by Plaintiff. (*Id.*)

Based on his appointment as Receiver tasked with "locating, managing, recouping, and distributing the assets of the Wilson-AB&C investment scheme," Plaintiff commenced this action against Defendants on October 6, 2015, asserting claims for declaratory judgment regarding the legal ownership of the real property upon which Defendants' home was built and unjust enrichment in the amount of $135,000.00. (*Id.*)

On February 15, 2017, Plaintiff filed a Motion for Summary Judgment, asserting that there are no genuine disputes of material fact as to Plaintiff's request for a declaratory judgment, or claim for unjust enrichment and resulting damages of $135,000.00. (ECF No. 53 at 6.) As of the filing of the Summary Judgment Motion, Plaintiff and the Bank agreed to a reformation of the deed to reflect that the Pressley Home was built on the Pressley Parcel, now subject to the Bank's mortgage.[3] (*Id*. at 5.) Plaintiff asserted that the agreement to reform the deed involved only Home Acres where the Pressley Home was built and the mortgage was placed. Thus, Plaintiff contended that this left Flag Pole Acres, owned by Defendants, subject to Plaintiff's declaratory judgment action. (*Id.*)

On March 1, 2017, Defendants filed a response in opposition to Plaintiff's Motion, asserting there is a genuine dispute about the material facts because the amount of damages has not been proven and thus, Plaintiff is not entitled to judgment as a matter of law. Further, Defendants asserted that Flag Pole Acres is required by law to be attached to Home Acres[4] and because the Pressley Home is in foreclosure, Plaintiff should seek damages from the Bank. (ECF No. 56 at 2.)

On March 8, 2017, Plaintiff filed a Reply to Defendants' response, asserting that based on undisputed facts contained in the depositions of Shawn Pressley and Whitfield, Plaintiff lowered the damages amount he was seeking from $135,000.00 to $73,705.00. (ECF No. 57 at 2.) Shawn Pressley admitted that a portion of the initial costs for the construction of the home came from

---

[3] *See Southern First v. Pressley*, 2016-CP-42-3079. Defendants are in default in the state court action.

[4] Because the County of Spartanburg requires that all homes, such as the Pressley Home, have legal access to the main county roads, Flag Pole Acres became an essential addition to the 2 acres deeded to Defendants for the Pressley Home, all of which is now subject to foreclosure proceedings in that county. However, Plaintiff contends that Flag Pole Acres are "critical to the Wilson Farm," subject to Plaintiff's claim. (ECF No. 53 at 8 n.4.)

Wilson through work performed by Whitfield and paid for by Wilson. (ECF No. 57-1 at 5-6.) Whitfield stated that he was hired by Wilson to perform work on Defendants' home. (ECF No. 57-2 at 2 ¶ 2.) He further stated, "I was responsible for contracting out the clearing and grading of the lot, digging and pouring the basement, footings, foundation walls, framing, subfloors, roof framing, roof sheathing and felting." (*Id*. at ¶ 3.) In his affidavit, Whitfield stated that he had receipts illustrating $4,300.00 he paid in checks, that he paid the concrete finisher $39,205.00 to complete the basement slab and walls, and he had lumber and materials from Dixie lumber totaling $13,200.00. (*Id*. at ¶ 4-5, *id*. at 3 ¶ 7.) Further, Whitfield asserted that he paid a framer five dollars a square foot to frame the home and three dollars a square foot to frame the basement, resulting in approximately $17,000.00 of costs. (ECF No. 57-2 at 3 ¶ 6.) Shawn Pressley specifically testified that Whitfield "paid for the materials and the pouring of the basement" and "paid for the framers to do the labor."[5] (ECF No. 57-1 at 5.) Plaintiff, however, still sought control of Flag Pole Acres, asserting it was not subject to the Bank's foreclosure action, and contended that Defendants' argument that Plaintiff should seek damages from the Bank was "wholly without merit." (ECF No. 57 at 3.)

On March 10, 2017, Defendants filed a Sur-Reply to Plaintiff's Reply, asserting that the documents Plaintiff relied on to lower the damages amount were questionable. (ECF No. 60 at 1.) Further, Defendants re-asserted that because the Bank is selling their home, Plaintiff needed to seek damages from the Bank, not them. (*Id*. at 2.) Lastly, Defendants asserted that Plaintiff's

---

[5] Whitfield states in his affidavit that the home was 2,365 square feet and the basement was 2,050 square feet. (ECF No. 57-2 at 3 ¶ 6.) These numbers were used to calculate the cost of framing. (*Id*.) In his deposition, Shawn Pressley described the home as 2,500 square feet plus an additional 2,000 square feet in the basement. (ECF 57-1 at 6.) As such, there is no dispute of fact as to the size of the home.

allegations that Flag Pole Acres was partially acquired and partially improved with monies arising from the Ponzi scheme were not supported by sufficient evidence. (*Id*. at 3.)

On September 19, 2017, the court granted in part Plaintiff's Motion for Summary Judgment as to the unjust enrichment claim, and denied in part Plaintiff's Motion as to the declaratory judgment action, and as to the person or entity responsible for payment of damages for the unjust enrichment claim. (ECF No. 75.) Consequently, on October 2, 2017, the court held a bench trial to resolve the remaining issues.

## II. SPECIFIC FINDINGS AND CONCLUSIONS

On September 19, 2017, the court found that there still remained genuine disputes of material fact as to: (1) whether Flag Pole Acres should be under control of the Bank's foreclosure action or part of the Wilson Farm that is under Plaintiff's control; and (2) whether the $73,705.00 damages amount should come from Defendants or the Bank after it forecloses on Defendants' home. (ECF No. 75.) On October 2, 2017, the court held a bench trial to resolve these issues. Based on the documents produced by Plaintiff at the bench trial, the court finds that Defendants must transfer the Reformed Flag Pole Acres to Plaintiff, and Defendants, not the Bank, owe Plaintiff $73,705.00. The court addresses its reasoning below.

A. Control of Flag Pole Acres

As to the first inquiry regarding whether Flag Pole Acres should be under control of the Bank's foreclosure action or part of the Wilson Farm that is under Plaintiff's control, the court finds that Flag Pole Acres is part of the Wilson Farm, and thus, as court-appointed Receiver, is under Plaintiff's control. After filing the declaratory judgment action seeking clarification of the location of the Pressley Home, Plaintiff and the Bank reached an agreement allowing for the Bank's dismissal and the Bank obtained, with Plaintiff's consent, a reformed deed from state court

reflecting that the Pressley Home was actually built on Home Acres ("Reformed Deed"). (ECF No. 81.) The Reformed Deed shows that the Pressley Home is built on the 2.04 acres (Home Acres) and the Flag Pole Acres is now 5.82 acres ("Reformed Flag Pole Acres"), for a total of 7.68 acres combined. (*Id*.)

On April 4, 2017, the South Carolina Court of Common Pleas issued an Order of Foreclosure on Home Acres. (*Id*.) The Order of Foreclosure states, "The Mortgage was not intended to encumber the entire 6.58 acre tract owned by the Pressleys; instead, it was intended to encumber a tract containing approximately two acres where the Pressley's home was being constructed and the Easement." (*Id*.) The Order of Foreclosure further states, "[T]he proceeds of the sale [shall] be disbursed as follows: A. To the costs and expenses of the action; B. To plaintiff's attorney's fees and court costs; C. To payment of plaintiff's mortgage, plus any necessary advances for taxes and insurance which may have been made by the plaintiff between the date of this hearing and the day and time of the sale; D. The balance, if any, be held for further Order of this Court." (*Id*.)

As a result of the completion of the foreclosure proceedings and the resulting Order of Foreclosure, Defendants remain in legal possession and control of the Reformed Flag Pole Acres. This property is part of the Wilson Farm that the court determined was an asset defined as "property directly traceable to the AB&C Receivership Entities." (*In re Receiver*, 8:12-cv-2078-JMC (D.S.C. 2015), ECF No. 217.) Thus, the court concludes that Defendants must transfer the Reformed Flag Pole Acres to Plaintiff.

B. <u>Payment of the Damages Amount</u>

As to the second inquiry regarding whether the $73,705.00 damages amount should come from Defendants or the Bank after it forecloses on Defendants' home, the court finds that the

7

damages amount is to come from Defendants. Defendants used monies that flowed directly from the Ponzi scheme to start and partially complete construction of the Pressley Home. (ECF No. 75 at 7.) As a result, Defendants were unjustly enriched in the amount of $73,705.00. (*Id*. at 7-9.)

Beyond this amount, Defendants received a $120,000 loan from the Bank in exchange for a mortgage on the Pressley Home. (ECF No. 1 at ¶ 28.) Subsequently, Defendants defaulted on their mortgage with the Bank and on October 5, 2016, the Bank served Defendants with a Summons and Complaint initiating foreclosure proceedings against Defendants on their mortgage. (ECF No. 81). In the foreclosure proceeding, the Bank sought to recover *only* the funds allowed for recovery by the Note and Mortgage. (*Id*.) The Bank's loan does not negate the fact that Defendants were initially unjustly enriched by $73,705.00 of Ponzi money. Therefore, the court concludes that Defendants, not the Bank, owe Plaintiff $73,705.00.

### III.     CONCLUSION

Based on the foregoing, and the court's previous decision that Defendants were unjustly enriched in the amount of $73,705.00 (ECF No. 75), the court finds that Defendants owe Plaintiff $73,705.00 stemming from the aforementioned Ponzi scheme. As to the declaratory judgment action, the court declares that Defendants are to transfer the Reformed Flag Pole Acres to Plaintiff.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

October 18, 2017
Columbia, South Carolina